# EXHIBIT A

# PICKARD AND DJINIS LLP

### ATTORNEYS AT LAW

### 1990 M STREET, N. W.

### WASHINGTON, D. C. 20036

TELEPHONE
(202) 223-4418

August 26, 2005

TELECOPIER
(202) 331-3813

<u>Via Facsimile (312-658-4111) & Overnight Mail</u>

Arbitration Department
National Futures Association
200 West Madison Street, Suite 1600
Chicago, IL 60606

      Re:   <u>Arbitration Claim</u>

Dear Arbitration Department:

      Enclosed for filing is McCarthey Investments LLC, et.al.'s Arbitration Claim Form, Statement of Claim, Certificate of Service and Exhibit. A copy of these documents has been mailed to all Respondents to the addresses listed in the Certificate of Service.

      The requisite fee of $1,550.00 in the name of McCarthey Investments LLC will be promptly wired to the NFA's bank account.

      If you have any questions, please call the undersigned or Paul J. Bazil at 202-223-4418.

                Very Truly Yours,

                Anthony W. Djinis

Enclosures

**NFA** NATIONAL FUTURES ASSOCIATION

## Arbitration Claim – Under the NFA Code of Arbitration

Before completing this form, carefully read NFA's Code of Arbitration and customer arbitration publications to ensure you understand the arbitration process and your responsibilities as a party.

**Part I – Claimant Information** – A Claimant is the person who believes he/she is owed money. For a joint account, everyone who is listed on the account should be named as a Claimant. For a partnership, corporation or other entity, the entity should be listed as the Claimant. The Claimant or the Claimant's representative should complete this claim form.

Date :  August 26, 2005

Name of Claimant(s):          McCarthey Investments LLC,
                              JFM Holdings, L.P., and
                              2001 Jane F. McCarthey GRAT No. 5

Home Address
    Street:

    City:
    State:
    Zip Code:
Home phone:
Business Address
    Street:             610 East South Temple, Suite 200

    City:               Salt Lake City
    State:              Utah
    Zip Code:           84102
    Business phone:     801-578-1246
    Fax:                801-363-6583
    E-mail Address:

Will the Claimant(s) be represented by an attorney or other representative? ☒ Yes   ☐ No

If yes, please complete the following:

Name of attorney or representative:     Anthony W. Djinis

Firm:                       Pickard and Djinis LLP
Address
    Street:         1990 M Street, N.W., Suite 660

    City:           Washington
    State:          D.C.
    Zip Code:       20036
    Phone:          202-223-4418
    Fax:            202-331-3813
    E-mail Address:     awdjinis@pickdjin.com

1

Which of the following describes the attorney or representative? (Check only one.)

☒ Attorney                                                    ☐ Non-Attorney
    States admitted to practice:District of Columbia    Relationship:
    Bar No.:930438                                         ☐ Officer, Partner, or Employee
                                                           ☐ Family Member, or
                                                           ☐ Other (specify)

## Part II – Claim Information

A Respondent is the firm(s) and/or individual(s) that you believe are responsible for the loss and want to recover money from. Please list each Respondent below. ANYONE YOU DO NOT NAME HERE IS NOT A RESPONDENT, WHICH MEANS YOU CANNOT RECOVER MONEY FROM THAT PERSON.

Name of Respondent:    Abbas A. Shah
Address
    Street:    20 Exchange Place
        45th Floor, Suite 4500
    City:    New York
    State:    New York
    Zip Code:    10005
Phone:    212-269-1890
E-mail Address:    ashah@isospace.com, ashah13@bloomberg.net

Name of Respondent:    Linuxor Asset Management, LLC
Address
    Street:    20 Exchange Place
        45th Floor, Suite 4500
    City:    New York
    State:    New York
    Zip Code:    10005
Phone:    212-269-1890
E-mail Address:

Name of Respondent:    Linuxor Capital Management, LLC    Adam S. Bornstein
Address
    Street:    20 Exchange Place    20 Exchange Place
        45th Floor, Suite 4500    45th Floor, Suite 4500
    City:    New York    New York
    State:    New York    New York
    Zip Code:    10005
Phone:    212-269-1890    212-269-1890
E-mail Address:

1.    Give the dates of the acts or transactions that are the subject of the dispute:  January 2002 - July 2004

2.    Give the date the Claimant(s) first knew that a dispute existed.  Please indicate the specific *month, day and year.*  (It is not enough to provide a time period.  Failure to properly answer this question will delay the claim.)   Month: July Day: 09 Year: 2004

3.  What is the claim amount? You must include all amounts you want to recover, including punitive and treble damages. You should not, however, include interest, costs, attorney's fees and other expenses in the claim amount. You should request them under Question 7.

    Claim Amount: $14,994,202.00

    Explain how you calculated this amount: Compensatory damages of $7,497,101.00 to recover monetary loss plus punitive damages of equal amount.

4.  Review this table to determine the amount of filing fees owed and enter that amount here. Filing Fees: $1,550.00

| If the claim amount is : | The filing fee is : |
|---|---|
| $      0.00 -   2,500.00 | $   50.00 |
| $    2,500.01 -   5,000.00 | $ 100.00 |
| $    5,000.01 - 10,000.00 | $ 150.00 |
| $  10,000.01 - 15,000.00 | $ 175.00 |
| $  15,000.01 - 25,000.00 | $ 200.00 |
| $  25,000.01 - 50,000.00 | $ 300.00 |
| $  50,000.01 -150,000.00 | $ 550.00 plus 1% of the excess over $50,000.00 |
| more than $150,000.00 | $1,550.00 |

5.  Review this table to determine the amount of hearing fees owed and enter that amount here. (These fees apply to both oral hearings and summary proceedings.) Hearing Fees: $5,100.00

| If the claim amount is : | The hearing fee is : |
|---|---|
| $      0.00 -  25,000.00 | $    125.00 |
| $  25,000.01 -  50,000.00 | $    275.00 |
| $  50,000.01 - 150,000.00 | $ 1,275.00 |
| $ 150,000.01 - 500,000.00 | $ 2,550.00 |
| more than $500,000.00 | $ 5,100.00 |

6.  Determine your total fees by adding the filing and hearing fee amounts. Enter this amount below and either pay the fee electronically or send a check or money order for this amount.

    Total Fees: $6,650.00

7.  Do you also request interest, costs, attorney's fees and other expenses incurred as part of the arbitration proceeding? ☒ Yes ☐ No

    If yes, please describe: We request attorneys' fees and costs incurred with the prosecution of this action in an amount to be proven at hearing. We also request interest upon the amounts owed at the maximum rate permitted by law.

3

### STATEMENT OF CLAIM FOR ARBITRATION
### BEFORE THE NATIONAL FUTURES ASSOCIATION

#### SUMMARY OF CLAIMS

This Demand for Arbitration arises from the misconduct of Respondents Linuxor Capital Management, LLC, Linuxor Asset Management, LLC, Abbas A. Shah and Adam S. Bornstein in connection with the operation of Linuxor Global Macro Fund, LP (the "Fund"), a commodity pool organized as a limited partnership under Delaware law. Claimants McCarthey Investments LLC, JFM Holdings, L.P., and the 2001 Jane F. McCarthey GRAT No. 5 - Article Second ("the McCarthey Investors") were investors in the Fund that lost millions of dollars as a result of the Respondents' misconduct and mismanagement.

On paper, the Fund was controlled and managed by two legal entities: (1) Respondent Linuxor Capital Management, LLC (the Fund's "General Partner"); and (2) Respondent Linuxor Asset Management, LLC (the Fund's "Investment Manager"). At all times relevant to this matter, Shah and Bornstein were the exclusive Managing Members of both the General Partner and the Investment Manager, and were personally responsible for every aspect of the Fund's business, including the management of the Fund's investments.

The Respondents engaged in three main categories of misconduct that directly caused the McCarthey Investors' losses:

*First*, through materially false and misleading statements and misrepresentations, Respondents General Partner, Investment Manager and Shah induced the McCarthey Investors to invest a total of $11.5 million in the Fund. Respondents General Partner, Investment Manager and Shah told them that while the Fund had enormous upside potential, they would also guarantee that the downside risk would be limited to 15% of the total investment on an annual basis – in effect, a stop-loss policy that would preserve at least 85% of their total investment annually. Respondents General Partner, Investment Manager and Shah also falsely stated that the McCarthey Investors would be part of a large pool of investors. Contrary to the policy, Respondents lost well over 60% of the McCarthey Investors' investment in less than two years, and, contrary to Respondents' statements, the McCarthey Investors investment constituted 98% of the Fund's assets. Respondents Investment Manager and Shah also violated Commodity Futures Trading Commission ("CFTC") regulations and National Futures Association ("NFA") rules by commingling the McCarthey's Investors' initial investment with the funds of the General Partner.

*Second*, through a combination of material misrepresentations and omissions, Respondents actively concealed the magnitude of the Fund's losses to ensure that the McCarthey Investors would maintain their investment in the Fund. In breach of the Fund's Agreement of Limited Partnership, Respondents failed to provide the McCarthey Investors with audited financial statements that would have revealed the true extent of the Fund's losses. Respondents Investment Manager and Shah also failed to provide quarterly and annual statements as required by CFTC regulations and NFA rules. Moreover, Respondents made repeated material misrepresentations to the McCarthey

Investors concerning the Fund's performance and the value of the McCarthey Investors' account. As a result, the McCarthey Investors were fraudulently induced to maintain their investment in the Fund resulting in millions of dollars of losses.

*Third*, Respondents were each grossly negligent in the management of the Fund's assets, taking large, unnecessary risks in violation of the 15% annual stop-loss policy and the Fund's other Investment Policies, resulting in millions of dollars in losses.

## PARTIES

Claimant McCarthey Investments LLC is a limited liability company organized under Delaware law. Claimant JFM Holdings, L.P. is a limited partnership organized under Delaware law. Claimant 2001 Jane F. McCarthey GRAT No. 5 - Article Second is a trust organized under Alaska law. The McCarthey Investors' principal place of business is 610 East South Temple, Suite 200, Salt Lake City, Utah 84102.

Respondent Linuxor Capital Management, LLC, a Delaware limited liability company, serves as the Fund's General Partner and at all times relevant has been a registered Commodity Trading Adviser ("CTA"), NFA ID: 0327968. As General Partner, it was responsible for managing all aspects of the Fund's business. Respondent Linuxor Asset Management, LLC, a Delaware limited liability company, serves as the Fund's Investment Manager and at all times relevant has been a registered Commodity Pool Operator ("CPO"), NFA ID: 0314145. Under the Investment Management Agreement with the Fund, the Investment Manager managed all of the Fund's investment and trading activities, subject to the supervision of the General Partner.

At all times relevant to this matter, Shah and Bornstein were the exclusive Managing Members and employees of both the General Partner and Investment Manager. At all times relevant, Shah, NFA ID: 0281340, has been the NFA registered associated person and approved principal of the Investment Manager and the approved principal of the General Partner. At all times relevant, Bornstein was an associated person of both the Investment Manager and the General Partner. As such, they personally made and were responsible for all of the Fund's investments and other business activities. The principal place of business for the General Partner, the Investment Manager, Shah, and Bornstein is 20 Exchange Place, 45th Floor, New York, NY 10005.

## JURISDICTION

At all pertinent times, Linuxor Asset Management, LLC was an NFA Member. Shah was an employee of, and an NFA registered associated person of, an NFA member. Bornstein was an employee or otherwise associated with an NFA member. Shah and Bornstein managed and controlled and were employees of the General Partner which was the alter ego of an NFA member. Claimants are customers of the General Partner and Investment Manager and this dispute is in connection with commodity futures contracts. Accordingly, arbitration before the NFA is appropriate pursuant to the NFA Code of Arbitration.

2

FACTS

**Respondents Fraudulently Induce the McCarthey Investors to Invest in the Fund.**

In early 2002, Shah met with Phil McCarthey, a representative of the McCarthey Investors, at a restaurant in New York. At the meeting, Shah described himself as an investment manager with a proven track record of success. He gave McCarthey a copy of the Fund's Offering Memorandum, which highlighted Shah's employment as a trader in various capacities for Lehman Brothers, UBS Securities, Interpacific Capital Management (another hedge fund), and Deutsche Bank.

According to the Offering Memorandum, the Fund's investment objective was "to generate superior risk-adjusted returns over a full market cycle, primarily through discretionary trading in global fixed-income instruments, equities and equity indices, futures, options, currencies and other financial instruments such as forwards and swaps."

After that meeting, Shah continued to solicit the McCarthey Investors to make a substantial investment in the Fund. Shah assured McCarthey that the McCarthey Investors would be a part of a large pool of significant investors. Shah also made repeated oral representations that he would put no more than 15% of the Fund's assets at risk on an annual basis – in essence a "stop-loss" policy that would limit the Fund's downside exposure to no more than 15% of the Fund's assets annually.

In addition to Shah's oral representations, the Fund's Offering Memorandum provided further assurances of a conservative investment approach:

> The Fund will exit an investing or trading strategy if such strategy causes the Fund to depreciate by an amount equal to or greater than 2% of the aggregate value of the Fund's assets. The Fund will also cease trading for the remainder of any month in which trading reversals caused the Fund's aggregate value to depreciate by an amount greater than 10% of the aggregate value of the Fund as of the beginning of that month.

> Moreover, the Investment Manager will restrict value-at-risk within tight boundaries until a specific level of profit has been attained.

These statements in the Offering Memorandum and Shah's statements regarding the Fund were materially false and misleading, in that, among other things, the Respondents never implemented a stop-loss policy and the Fund never had a large pool of significant investors. In reliance on these fraudulent misrepresentations, in March and May 2002, the McCarthey Investors wired $11.5 million to the General Partner to be invested in the Fund. The only investors with the Fund other than the McCarthey Investors were the wife of Philip E. Egger, who invested $300,000 in the Fund, and Shah, who invested $200,000 in the Fund.

**Respondents Conceal the Extent of the Fund's Losses.**

In August 2002, the Fund suffered a 30% loss due, upon information and belief, due to large, unsuccessful investments in the Japanese Yen. However, Shah did not inform the McCarthey Investors of the loss. Indeed, the Respondents did not send any

3

quarterly, annual or other reports concerning the performance or financial condition of the Fund.

In late August 2003, Shah called Todd Brashear, the McCarthey Investors' financial advisor, to inform him that the McCarthey Investors would be receiving the 2002 K-1 Schedule (a tax document) covering the Fund's performance through the end of December 2002, which would indicate a loss for 2002, but that since the end of 2002, the Fund had recouped much of that loss. Furthermore, in an e-mail to Brashear, Shah downplayed the significance of the 2002 loss and stated: "[W]e have been able to outperform most global indices (fixed income or equities) . . . . We have thus far recovered more than half of the capital loss [from August 2002] and if we continue at this pace we hope that we will have not only recovered all the capital but there is a good likelihood that we will be positive as far as returns since inception are concerned." Shah's representations to the McCarthey Investors were materially false and misleading.

In September 2003, the McCarthey Investors received the 2002 K-1 Schedule for the Fund, which indicated that the Fund's value declined approximately 43% that year – a loss of nearly $5 million for the McCarthey Investors. In addition, the K-1 showed that the McCarthey Investors held approximately 98% of the Fund's assets. This was a far cry from Shah's earlier promise that the McCarthey Investors would be part of a large pool of investors.

After receiving the K-1, Brashear and McCarthey contacted Shah to express their surprise and dissatisfaction with the information it contained and threatened to liquidate the entire investment immediately. While Shah admitted that the only other investors in the Fund were Egger's wife, who invested $300,000 and Shah himself, who invested $200,000, he repeated his assurances about the Fund's strong performance in the current year (2003), promised to abide by the 15% stop-loss policy in the future, promised to charge no management fees until the McCarthey Investors recouped 100% of their losses and promised to start sending monthly and quarterly account valuation statements. Each of these representations was materially deceptive and misleading. Although Shah began sending weekly e-mails about the Fund's performance, the e-mails contained materially false and misleading statements about the financial condition of the Fund, the performance of the Fund and the value of the McCarthey Investors' investments in the Fund.

In January 2004 Brashear requested a valuation statement for the McCarthey Investors holdings as of December 31, 2003. On January 20, 2004, the McCarthey Investors received an e-mail from Shah in which he represented that, as of December 31, 2003, the net asset value of the McCarthy Investors' investment was $8,095,000. These representations were materially false and deceptive and greatly overstated the value of the McCarthey Investors' investment. In fact, the Fund's total net asset value, as of December 31, 2003, was only $4.9 million.

In May 2004, Shah informed Brashear that the Fund's performance during the prior quarter outperformed its target indices and outperformed other fund managers and that the value of the McCarthey Investors' investment had increased to approximately $8.2 million. In response, Brashear told Shah that based upon the weekly e-mails Shah had provided to him, the value of the McCarthey's Investors' investment should have

been much higher than $8.2 million. Shah said he would go back and check his figures. Shah then told Brashear that the value of the McCarthey Investors' investment was actually valued at $9.5 million. These representations were materially false and deceptive and greatly overstated the value of the McCarthey Investors' investment in the Fund. In fact, the value of the McCarthey Investors' investment at that time was worth less than half of what Shah claimed.

### The McCarthey Investors Learn That Respondents' Representations Were False, Deceptive and Misleading and Withdraw from the Fund.

In May 2004, a representative of the NFA contacted Brashear in connection with an examination of the Investment Manager regarding its management of the Fund. During this conversation, the NFA representative informed Brashear that the NFA could only account for $4 million to $5 million of the Fund's assets.

McCarthey and Brashear subsequently called Shah, who told them that the Fund had between $9 and $9.5 million in assets and that the McCarthey Investors' initial $11.5 million investment would be fully recouped by the end of June 2004. This representation was materially false and deceptive and greatly overstated the value of the interests of the McCarthey Investors.

On June 10, 2004, Brashear sent Shah a letter demanding that the McCarthey Investors' accounts be liquidated. Shah agreed to liquidate the Fund and complete the redemptions by June 30, 2004. However, contrary to Shah's promise to liquidate the Fund, Shah continued to place trades in the Fund's account and, as of June 30, 2004, the Fund still had open positions. On or about July 9, 2004, the McCarthey Investors finally received the proceeds from their account in the amount of $4,002,899. The McCarthey Investors lost a total of $7,497,101.

### CLAIMS FOR RELIEF

*Breach of Fiduciary Duty.* Shah, Bornstein, the General Partner, and the Investment Manager each had independent duties of loyalty, care, and candor to the Limited Partners that required, at a minimum, that they (i) comply with the Fund's Investment Policies, as described in the Offering Memorandum and in statements by Shah, (ii) be truthful in all communications with the Limited Partners; and (iii) carry out their responsibilities in accordance with the Agreement of Limited Partnership. They willfully or recklessly breached those duties by engaging in excessively risky trading strategies that violated the Fund's Investment Policies, misrepresenting the Fund's performance and the value of the McCarthey Investors' holdings, and failing to provide audited financial statements for the Fund, as required under the Agreement of Limited Partnership. As a direct result, the McCarthey Investors suffered monetary damages.

*Aiding and Abetting Breach of Fiduciary Duty.* Shah and Bornstein willfully or recklessly aided and abetted the General Partner's and Investment Manager's breaches of fiduciary duty because they knowingly participated in those breaches, as described above.

*Gross Negligence.* Shah, Bornstein, the General Partner, and the Investment Manager were grossly negligent in their management of Fund assets. At a minimum, the standard of care applicable to the management of the Fund's assets required investments that "restrict[ed] value-at-risk within tight boundaries until a specific level of profit has been

5

attained," as stated in the Offering Memorandum, and limited downside exposure to no more than 15% of the Fund's assets on an annual basis, as promised by Shah. In conscious and reckless disregard of those standards, Shah, Bornstein, the General Partner, and the Investment Manager pursued high-risk investment strategies with large portions of the Fund's assets, resulting in a loss of more than 60% of the Fund's assets in less than two years. As a direct result, the McCarthey Investors suffered monetary damages.

*Federal Securities Fraud.* In violation of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5, Shah, the General Partner and the Investment Manager induced the McCarthey Investors to invest in the Fund by making knowing or reckless material misrepresentations about how the Fund would be managed, the risk of loss to investors, the number of other investors in the Fund, and the size of those other investors' investments. Respondents induced the McCarthey Investors to maintain their investment in the Fund, by making knowing or reckless material misrepresentations and omissions concerning the Fund's performance and the value of the McCarthey Investors' accounts. The McCarthey Investors reasonably relied upon these material misrepresentations and omissions in deciding to invest and maintain their investment in the Fund. Respondents engaged in deceptive acts and practices, including repeatedly making materially false and misleading statements about the financial condition of the Fund, the performance of the Fund and the value of the McCarthey Investors' investment in the Fund; failing to provide quarterly, annual and other reports concerning the financial condition of the Fund, the performance of the Fund and the value of the McCarthey Investors' investment in the Fund; and otherwise concealed materially adverse information about the McCarthey Investors' investment in the Fund. As a direct result, the McCarthey Investors suffered monetary damages.

*Federal Commodity Fraud.* In violation of Section 4o of the Commodity Exchange Act, 7 U.S.C. § 6o, Shah, the General Partner, and the Investment Manager induced the McCarthey Investors to invest in the Fund by making knowing or reckless material misrepresentations about how the Fund would be managed, the risk of loss to investors, the number of other investors in the Fund, and the size of those other investors' investment. Respondents induced the McCarthey Investors to maintain their investment in the Fund, by making knowing or reckless material misrepresentations and omissions concerning the Fund's performance and the value of the McCarthey Investors' accounts. The McCarthey Investors reasonably relied upon these material misrepresentations and omissions in deciding to invest and continuing to invest in the Fund. Respondents engaged in deceptive acts and practices, including repeatedly making materially false and misleading statements about the financial condition of the Fund, the performance of the Fund and the value of the McCarthey Investors' investment in the Fund; failing to provide quarterly, annual and other reports concerning the financial condition of the Fund, the performance of the Fund and the value of the McCarthey Investors' investment in the Fund; and otherwise concealed materially adverse information about the McCarthey Investors' investment in the Fund. As a direct result, the McCarthey Investors suffered monetary damages. For further information about other violations of the CFTC regulations and NFA rules by Respondent General Partner, Investment Manager and Shah, please see the attached NFA disciplinary complaint against Investment Manager and Shah, Case No.04-BCC-017, dated November 30, 2004 (Ex. 1)

*Securities Fraud Under Utah Law.* As described above, the misrepresentations and omissions of Shah, the General Partner, and the Investment Manager also violate the Utah Uniform Securities Act, Utah Code Ann. §§ 61-1-1(2), 61-1-22(1)&(3).

*Common Law Fraud.* As described above, the misrepresentations and omissions of Shah, the General Partner, and the Investment Manager also constitute common law fraud. In addition, to induce the McCarthey Investors to maintain their investment in the Fund, Shah, the General Partner, and the Investment Manager made knowing or reckless misrepresentations and omissions concerning the Fund's performance and the value of the McCarthey Investors' investment. The McCarthey Investors reasonably relied upon these misrepresentations and omissions in deciding to remain invested in the Fund. As a direct result, the McCarthey Investors suffered monetary damages.

*Aiding and Abetting Common Law Fraud.* Shah and Bornstein are liable for aiding and abetting common law fraud because they knew of, and knowingly assisted, the Investment Manager's and General Partner's fraudulent conduct.

*Breach of Contract.* The General Partner was required by the Agreement of Limited Partnership to provide audited financial statements on an annual basis. Implicit in that Agreement was the corollary requirement that any reports provided to the Limited Partners concerning the valuation of the Fund's assets or the Limited Partner's holdings would be accurate. The General Partner willfully breached those requirements by failing to produce audited financial statements or accurate valuation reports. Had the McCarthey Investors received audited financial statements or accurate valuation reports as required under the Agreement of Limited Partnership, they would have learned the Fund's true financial condition, liquidated their investment, and averted substantial additional losses. In addition, the 15% stop-loss policy promised by Shah and the Investment Policies set forth in the Offering Memorandum were express terms of the McCarthey Investors' investment in the Fund and implied terms of the Agreement of Limited Partnership. Because the General Partner willfully or recklessly failed to abide by those terms, it is liable for a breach of contract. As a direct result of the above breaches of contract, the McCarthey Investors suffered monetary damages. Because Shah and Bornstein functioned as the General Partner's alter egos in all material respects, they are personally liable for the General Partner's breaches of contract.

*Breach of the Implied Covenant of Good Faith and Fair Dealing.* As mentioned above, the 15% stop-loss policy promised by Shah, the Investment Policies set forth in the Offering Memorandum, and the requirement to provide accurate valuation reports were implied terms of the Limited Partnership Agreement. Because the General Partner willfully or recklessly failed to abide by those implied terms, it is liable for a breach of the implied covenant of good faith and fair dealing. As a direct result, the McCarthey Investors suffered monetary damages. Because Shah and Bornstein functioned as the General Partner's alter egos in all material respects, they are personally liable for the General Partner's breaches of the implied covenant of good faith and fair dealing.

## REQUEST FOR RELIEF

For the Foregoing reasons, the McCarthey Investors seek full compensatory damages to recover their monetary losses in the Fund, as well as: (a) punitive damages; (b) interest, cost and fees, as authorized by Section 10(b) of the NFA Code of Arbitration; (c) attorney's fees, as authorized Section 12 of the NFA Code of Arbitration; and (d) such other and further relief as the arbitrators deem just and equitable, including administrative fees and expenses as well as arbitrator fees and expenses.

Dated: August 26, 2005

Respectfully submitted,

By: _____
Anthony W. Djinis, Esq.
Paul J. Bazil, Esq.
Peter E. McLeod, Esq.

PICKARD AND DJINIS LLP
1990 M Street, N.W.
Washington, D.C. 20036
Phone: 202-223-4418
Fax: 202-331-3813
Attorneys for Claimants

8

## Certificate of Service

The undersigned hereby certifies that true and correct copies of the foregoing were mailed this _26_ day of August 2005, by overnight courier, to the following:

> **Abbas A. Shah**
> 20 Exchange Place, 45 Floor, Suite 4500
> New York, New York 10017

> **Adam S. Bornstein**
> 20 Exchange Place, 45 Floor, Suite 4500
> New York, New York 10017

> **Linuxor Capital Partners, LLC**
> 20 Exchange Place, 45 Floor, Suite 4500
> New York, New York 10017
> Attn: Abbas A. Shah

> **Linuxor Asset Management, LLC**
> 20 Exchange Place, 45 Floor, Suite 4500
> New York, New York 10017
> Attn: Abbas A. Shah

Copies were also sent to the following addresses:

Abbas A. Shah
200 East 69th Street
Apt. #21A
New York, New York 10021

Linuxor Capital Management, LLC
Linuxor Asset Management, LLC
Abbas A Shah
90 Williams Street, Suite 1201
New York, New York 10038

Linuxor Capital Management, LLC
Linuxor Asset Management, LLC
Abbas A. Shah
230 Park Avenue, 10th Floor, Suite 139
New York, New York 10169

ashah@isospace.com

ashah13@bloomberg.net

Peter E. McLeod



NATIONAL FUTURES ASSOCIATION
BEFORE THE
BUSINESS CONDUCT COMMITTEE

In the Matter of:

LINUXOR ASSET MANAGEMENT LLC
(NFA ID #314145),

    and

ABBAS A. SHAH
(NFA ID #281340),

    Respondents.

NFA Case No. 04-BCC-017

## COMPLAINT

Having reviewed the investigative report submitted by the Compliance Department of National Futures Association ("NFA"), and having reason to believe that NFA Requirements are being, have been, or are about to be violated and that the matter should be adjudicated, NFA's Business Conduct Committee ("Committee") issues this Complaint against Linuxor Asset Management LLC ("Linuxor") and Abbas A. Shah ("Shah").

## ALLEGATIONS

## JURISDICTION

1.    At all times relevant to this Complaint, Linuxor was registered as a commodity pool operator ("CPO") Member of NFA. As such, Shah was and is required to comply with NFA Requirements and is subject to disciplinary proceedings for violations thereof.

2.    At all times relevant to this Complaint, Shah was a principal and an associated person ("AP") of Linuxor and an NFA Associate in accordance with NFA Bylaw

EXHIBIT 1

301(b). As such, Shah was and is required to comply with NFA Requirements and is subject to disciplinary proceedings for violations thereof.

## BACKGROUND

3. Linuxor is located in New York City. Linuxor has been registered as a CPO since December 2001 and an NFA Member since February 2002. Currently, Linuxor is not doing business and has filed a notice to withdraw its registration and NFA membership. Up until July 2004, Linuxor's principal activity was the operation of a commodity pool called Linuxor Global Macro Fund LP ("Global LP" or "the fund") which operated pursuant to Commodity Futures Trading Commission ("CFTC") Regulation 4.7. The fund commenced operations in March 2002 and was liquidated in early July 2004. The fund had a total of five participants during its period of operation.

4. NFA conducted an audit of Linuxor in March 2004. The audit revealed that Linuxor and Shah had failed to prepare and distribute required financial statements to participants of Global LP and, in at least two instances, sent fraudulent e-mail messages to participants which greatly exaggerated the value of the participants' interest in the fund. In addition, throughout the audit Shah was slow in responding to NFA's requests for records.

## APPLICABLE RULES

5. NFA Compliance Rule 2-2(c) provides that no Member or Associate shall willfully make or cause to be made to a customer a false report, or willfully to enter or cause to be entered for a customer a false record, in or in connection with any commodity futures contract.

2

6. NFA Compliance Rule 2-2(f) provides that no Member or Associate shall willfully submit materially false or misleading information to NFA or its agents.

7. NFA Compliance Rule 2-5 provides, in pertinent part, that each Member and Associate shall cooperate promptly and fully with NFA in any NFA investigation, inquiry, audit, or examination.

8. NFA Compliance Rule 2-10 provides that each Member shall maintain adequate books and records necessary and appropriate to conduct its business including, without limitation, the records required to be kept under CFTC Regulations 1.18 and 1.32 through 1.37 for the period required under CFTC Regulation 1.31.

9. NFA Compliance Rule 2-13 provides, in pertinent part, that any Member who violates any of CFTC Regulations 4.1, 4.7, 4.12 and 4.16 through 4.41 shall be deemed to have violated an NFA requirement.

10. NFA Bylaw 1101 provides, in pertinent part, that no Member may carry an account, accept an order or handle a transaction in commodity futures contracts for or on behalf of any non-Member of NFA that is required to be registered with the CFTC and that is acting in respect to the account, order or transaction for a customer.

## COUNT I

**VIOLATION OF NFA COMPLIANCE RULES 2-2(c), 2-2(f), 2-5 AND 2-10: PROVIDING FALSE AND MISLEADING INFORMATION TO FUND PARTICIPANTS AND NFA; FAILING TO COOPERATE WITH NFA IN THE COURSE OF AN NFA AUDIT; AND FAILING TO KEEP ADEQUATE BOOKS AND RECORDS.**

11. The allegations set forth paragraphs 1 through 8 are realleged as paragraph 11.

12. At the beginning of NFA's March 2004 audit of Linuxor, NFA met with Shah. During this meeting, NFA asked Shah how many participants Global LP had, the

3

current net asset value of the fund, and the date of the fund's most recent account statement. Shah was unable to answer these questions.

13. At the initial meeting, NFA gave Shah a list of questions concerning Linuxor's operations and a list of books and records that NFA needed to complete its audit (e.g., Global LP account statements, bank and broker statements, etc.). Over the next several weeks, NFA repeatedly asked Shah to produce the requested books and records and submit responses to NFA's list of questions. On May 11, 2004, Shah provided NFA with some, but not all, of the records NFA had requested.

14. On May 17, 2004, NFA sent a letter to Linuxor again requesting it to produce all records NFA had previously requested but had not yet received from Linuxor. On May 24, 2004, Linuxor provided some additional records to NFA, but still failed to produce all of the records which NFA had requested. As of the date of this Complaint, Linuxor still has not provided NFA with all of the books and records it had requested from Linuxor.

15. During the audit, NFA also asked Linuxor to identify all bank and broker accounts that it maintained for Global LP. It identified some but failed to identify broker accounts at Man Financial, Inc., ABN AMRO, and UBS Securities. NFA learned of these accounts on its own.

16. As alleged above, the fund had a total of five participants, three of which were related entities that together initially invested a total of $11.5 million in the fund in May 2002. After investing in the fund, these three participants did not receive any information about the fund's performance or their investments until sometime

4

in August or September 2003, when they received a K-1 statement for 2002 showing that the fund had lost 42% of their initial investment.

17.    At or about the time the three participants received the 2002 K-1 statement, through their representative, they received an e-mail from Shah in which Shah represented that, "we have thus far recovered more than half of the capital loss and if we continue at this pace we hope that we will have not only recovered all of the capital loss but there it good likelihood that we will be positive as far as returns since inception are concerned". However, Shah's representations were untrue, as the fund had not, as of then, recovered anywhere near half of the capital loss.

18.    In January 2004, the three participants' representative received another e-mail from Shah in which he represented that, as of December 31, 2003, the net asset value of the interests of the three participants was over $8 million. This representation was false and deceptive and greatly overstated the value of the interests of the three participants. In fact, the fund's total net asset value, as of December 31, 2003, was only $4.9 million and that figure included the interests of two other participants.

19.    In early June 2004, the three related participants, through their representative, spoke with Shah. At that time, Shah claimed that the fund had between $9 and $9.5 million in assets, that the majority of the three participants' initial $11.5 million investment had already been recouped, and that it would be fully recouped by the end of June 2004. The following day, Shah admitted to the representative that he might have over-estimated the value of the fund when he said it was worth between $9 and $9.5 million. Shah said that he was unsure

5

what the actual value of the fund was. (The fund's financial records disclosed that the fund's net asset value as of that date was only about $4 million.)

20.    At or about the time of the conversation alleged in paragraph 19, above, the representative of the three related participants requested that Shah redeem their interests, which Shah agreed to do. Shah said he would liquidate the fund and complete the redemptions by June 30, 2004. (The other two participants in the fund had already fully redeemed their interests in April 2004.) Contrary to Shah's promise to liquidate the fund, he continued to place trades in the fund's account and, as of June 30, 2004, the fund still had open positions.

21.    On July 1, 2004, NFA contacted Shah to ask about the open positions. Shah claimed that the positions had been closed that morning and that all funds would be returned to the participants by the next morning, July 2, 2004. Shah's claim was false. The open positions were not liquidated on July 1, 2004, as Shah had claimed and, in fact, the fund continued to conduct significant trading on July 1 and the morning of July 2, 2004. Later in the day, on July 2, 2004, all positions in the fund were finally liquidated and over $4 million was wired to the three participants.

22.    On September 26, 2003, the fund's administrator, Citco Fund Services ("Citco"), sent a letter to Shah advising him that it was resigning as Linuxor's administrator, effective October 31, 2003. Yet for many months after Citco resigned, Shah continued to represent to NFA that Citco was the fund's administrator and blame Citco for the fund's delinquent financial statements.

23.  By reason of the foregoing acts and omissions, Linuxor and Shah are alleged to have committed violations of NFA Compliance Rules 2-2(c), 2-2(f) and 2-5; and Linuxor is also charged with violations of NFA Compliance Rule 2-10.

## COUNT II

**VIOLATION OF NFA BYLAW 1101: DOING BUSINESS WITH LINUXOR CAPITAL MANAGEMENT LLC WHICH WAS REQUIRED TO BE REGISTERED AS A CPO NFA MEMBER BUT WAS NOT.**

24.  The allegations set forth paragraphs 1 through 4 and 10 are realleged as paragraph 24.

25.  The limited partnership agreement for the fund identified Linuxor Capital Management LLC ("LCM") as the general partner of the fund. Moreover, in two extension requests that LCM filed with NFA seeking an extension of time to file the fund's 2002 pool financial statements, LCM identified itself as the CPO of the fund.

26.  However, the fund's offering memorandum identified LCM as the fund's investment advisor and Linuxor as the fund's CPO. The offering memorandum also claimed that LCM was a Member of NFA when, in fact, it has never been an NFA Member.

27.  LCM should have been registered as a CPO and an NFA Member but was not. Thus, Linuxor, by doing business with LCM, violated NFA Bylaw 1101.

28.  By reason of the foregoing acts and omissions, Linuxor is alleged to have committed violations of NFA Bylaw 1101.

COUNT III

VIOLATION OF NFA COMPLIANCE RULE 2-13: FAILING TO PROVIDE
QUARTERLY AND ANNUAL ACCOUNT STATEMENTS TO PARTICIPANTS OF
GLOBAL LP; RECEIVING MONIES FOR THE PURCHASE OF INTERESTS IN
GLOBAL LP NOT IN GLOBAL LP'S NAME BUT IN THE NAME OF LCM; AND
DEPOSITING THOSE MONIES IN ACCOUNTS OF LCM OR LINUXOR, THEREBY
COMMINGLING THE PROPERTY OF GLOBAL LP WITH THE PROPERTY OF LCM
OR LINUXOR.

29.    The allegations set forth paragraphs 1 through 4 and 9 are realleged as

paragraph 29.

30.    NFA Compliance Rule 2-13, which incorporates CFTC Regulations 4.7 and 4.20,

requires a CPO to provide pool participants with quarterly and annual account

statements.  The Rule also requires that funds received by a CPO for the

purchase of interests in a commodity pool be received in the pool's name.  In

addition, the Rule prohibits a CPO from commingling the property of any pool it

operates with the property of another person.

31.    Between March 2002 and June 2004, Linuxor was required, under NFA

Compliance Rule 2-13 and CFTC Regulation 4.7, to provide fund participants

with quarterly account statements for the final three quarters of 2002, all four

quarters of 2003, and the first two quarters of 2004, and also annual account

statements for 2002 and 2003.  However, Linuxor failed to provide any of these

account statements to fund participants.

32.    Linuxor also violated NFA Compliance Rule 2-13 and CFTC Regulation 4.20 by

instructing participants to make their initial investments payable not in the name

of the fund but in the name of LCM.  Moreover, Linuxor deposited participants'

initial investments into a bank account of LCM or Linuxor before wiring these

monies to the fund's broker accounts.

33.     By reason of the foregoing acts and omissions, Linuxor is alleged to have committed violations of NFA Compliance Rule 2-13.

## PROCEDURAL REQUIREMENTS

### ANSWER

You must file a written Answer to the Complaint with NFA within thirty (30) days of the date of the Complaint. The Answer shall respond to each allegation in the Complaint by admitting, denying or averring that you lack sufficient knowledge or information to admit or deny the allegation. An averment of insufficient knowledge or information may only be made after a diligent effort has been made to ascertain the relevant facts and shall be deemed to be a denial of the pertinent allegation.

NFA staff is authorized to grant such reasonable extensions of time in which an Answer may be filed as it deems appropriate. The place for filing an Answer shall be:

> National Futures Association
> 200 West Madison Street
> Suite 1600
> Chicago, Illinois  60606-3447
> Attn: Legal Department-Docketing

Failure to file an Answer as provided above shall be deemed an admission of the facts and legal conclusions contained in the Complaint. Failure to respond to any allegation shall be deemed an admission of that allegation. Failure to file an Answer as provided above shall be deemed a waiver of hearing.

## POTENTIAL PENALTIES, DISQUALIFICATION AND INELIGIBILITY

At the conclusion of the proceedings conducted as a result of or in connection with the issuance of this Complaint, the Committee may impose one or more of the following penalties:

9

(a)    expulsion or suspension for a specified period from NFA membership;

(b)    bar or suspension for a specified period from association with an NFA Member;

(c)    censure or reprimand;

(d)    a monetary fine not to exceed $250,000 for each violation found; and

(e)    order to cease and desist or any other fitting penalty or remedial action not inconsistent with these penalties.

The allegations in this Complaint may constitute a statutory disqualification from registration under Section 8a(3)(M) of the Commodity Exchange Act. Respondents in this matter who apply for registration in any new capacity, including as an associated person with a new sponsor, may be denied registration based on the pendency of this proceeding.

Pursuant to the provisions of CFTC Regulation 1.63, penalties imposed in connection with this Complaint may temporarily or permanently render Respondents who are individuals ineligible to serve on disciplinary committees, arbitration panels and governing boards of a self-regulatory organization, as that term is defined in CFTC Regulation 1.63.

NATIONAL FUTURES ASSOCIATION
BUSINESS CONDUCT COMMITTEE

Dated: 11-30-04                    By: _____
                                        Chairperson

m:\rvh\Linuxor Complaint

10

AFFIDAVIT OF SERVICE

I, Nancy Miskovich-Paschen, on oath state that on November 30, 2004, I

served copies of the attached Complaint, by placing such copies in the United States

mail, first-class delivery, and by overnight mail, in envelopes addressed as follows:

Linuxor Asset Management LLC          Abbas A. Shah
20 Exchange Place                     200 East 69th Street
45th Floor                            Apt. #21A
New York, NY 10017                    New York, NY 10021
Attn: Abbas A. Shah

_Nancy Miskovich-Paschen_
Nancy Miskovich-Paschen


Subscribed and sworn to before me
on this 30th day of November 2004.

_Christine Makino_
Notary Public

```
OFFICIAL SEAL
CHRISTINE MAKINO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/03/08
```

# EXHIBIT  B



Re: 05-ARB-107/McCarthy Investments, etc. v. Linuxor Asset Mgmt., et al.

<u>SUBMISSION AGREEMENT</u>

I, the undersigned Respondent, state that I have read the rules of National Futures Association relating to arbitration and hereby submit the present matter in controversy, as set forth in the Demand for Arbitration, answers and any other claims which may be asserted, to arbitration in accordance with the Bylaws, Rules and Code of Arbitration of National Futures Association.

I understand that by submitting to arbitration at NFA I may be waiving my right to sue in a court of law, file a reparations claim at the Commodity Futures Trading Commission, or arbitrate this claim in another forum.

Further, I agree to abide by and perform any award(s) rendered pursuant to this arbitration proceeding and understand that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, I voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgement.

<u>Signature of Respondent</u>

(Signature of individual; or of a
general partner of a partnership,
if Respondent is a partnership; or
of an officer of a corporation,
if Respondent is a corporation.)

LINUXOR  ASSET  MGMT  LLC

Name of Partnership or          If Corporation, affix
Corporation, if applicable.     Corporate Seal

Date: 10-10-05

mg\subous



Re: 05-ARB-107/McCarthy Investments, etc. v. Linuxor Asset Mgmt., et al.

### SUBMISSION AGREEMENT

I, the undersigned Respondent, state that I have read the rules of National Futures Association relating to arbitration and hereby submit the present matter in controversy, as set forth in the Demand for Arbitration, answers and any other claims which may be asserted, to arbitration in accordance with the Bylaws, Rules and Code of Arbitration of National Futures Association.

I understand that by submitting to arbitration at NFA I may be waiving my right to sue in a court of law, file a reparations claim at the Commodity Futures Trading Commission, or arbitrate this claim in another forum.

Further, I agree to abide by and perform any award(s) rendered pursuant to this arbitration proceeding and understand that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, I voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgement.

_____ Signature of Respondent _____

_____

(Signature of individual; or of a
general partner of a partnership,
if Respondent is a partnership; or
of an officer of a corporation,
if Respondent is a corporation.)

*LINUXOR CAPITAL MGMT LP*

_____        If Corporation, affix
Name of Partnership or                  Corporate Seal
Corporation, if applicable.

Date: *10-10-05*

mg\subcus



Re: 05-ARB-107/McCarthy Investments, etc. v. Linuxor Asset Mgmt:, et al.

<u>SUBMISSION AGREEMENT</u>

I, the undersigned Respondent, state that I have read the rules of National Futures Association relating to arbitration and hereby submit the present matter in controversy, as set forth in the Demand for Arbitration, answers and any other claims which may be asserted, to arbitration in accordance with the Bylaws, Rules and Code of Arbitration of National Futures Association.

I understand that by submitting to arbitration at NFA I may be waiving my right to sue in a court of law, file a reparations claim at the Commodity Futures Trading Commission, or arbitrate this claim in another forum.

Further, I agree to abide by and perform any award(s) rendered pursuant to this arbitration proceeding and understand that a judgment and any interest due thereon may be entered upon such award(s) and, for these purposes, I voluntarily consent to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgement.

_____ Signature of Respondent _____

_____

(Signature of individual; or of a general partner of a partnership, if Respondent is a partnership; or of an officer of a corporation, if Respondent is a corporation.)

ABBAS SHAH
_____
Name of Partnership or          If Corporation, affix
Corporation, if applicable.          Corporate Seal

Date: 10-10-05

mg\subcus